HAEGGQUIST & ECK, LLP

HAEGGQUIST & ECK, LLP
AMBER L. ECK (177882)
  ambere@haelaw.com
ALREEN HAEGGQUIST (221858)
  alreenh@haelaw.com
AARON M. OLSEN (259923)
  aarono@haelaw.com
IAN PIKE (329183)
  ianp@haelaw.com
225 Broadway, Suite 2050
San Diego, CA  92101
Telephone: 619-342-8000
Facsimile: 619-342-7878

Attorneys for Plaintiffs and the Proposed Class

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEAN BURKE and JAMES POMERENE, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>CLEARVIEW AI, INC., a Delaware Corporation; HOAN TON-THAT, an Individual; RICHARD SCHWARTZ, an Individual; and DOES 1 through 10, inclusive,<br><br>　　　　Defendants. | Case No.: **'20 CV 0370 BAS MSB**<br><br>CLASS ACTION<br><br>CLASS ACTION COMPLAINT<br><br><br><br>DEMAND FOR JURY TRIAL |

Plaintiffs Sean Burke and James Pomerene ("Plaintiffs"), by their attorneys, bring this action individually and on behalf of all others similarly situated against Defendants Clearview AI, Inc. ("Clearview"), Hoan Ton-That, Richard Schwartz, and DOES 1 through 10, inclusive (collectively, "Defendants"). Plaintiffs make the following allegations upon information and belief (except those allegations as to the Plaintiffs or their attorneys, which are based on personal knowledge), based upon an investigation that is reasonable under the circumstances, which allegations are likely to have evidentiary support after a reasonable opportunity for further investigation and/or discovery.

**NATURE OF ACTION**

1.      The disturbing conduct at issue in this Complaint was highlighted in a letter by Senator Edward J. Markey to Clearview about its use of technology to collect, generate, and sell consumers' biometric information without their consent:

> "Widespread use of your technology could facilitate dangerous behavior and could effectively destroy individuals' ability to go about their daily lives anonymously."

> "The ways in which this technology could be weaponized are vast and disturbing."

2.      As warned by Senator Markey, "[a]ny technology with the ability to collect and analyze individuals' biometric information has alarming potential to impinge on the public's civil liberties and privacy." Indeed, Defendants' use of Clearview's technology does just that and violates California and Illinois privacy protection statutes, among other laws.

3.      Without notice or consent, Clearview illicitly "scraped" hundreds, if not thousands or more, websites, such as Facebook, Twitter, and Google, for over

HAEGGQUIST & ECK, LLP

three billion images of consumers' faces.[1] Clearview's automated scraping of images violates the policies of websites like Facebook and Twitter, the latter of which specifically prohibits scraping to build facial recognition databases. Unlawfully, Defendants stored billions of scraped images of faces in Clearview's database, used its facial recognition software to generate biometric information (aka a "Faceprint") to match the face to identifiable information, and then sold access to the database to third-party entities and agencies for commercial gain.

4.      In clear violation of multiple privacy laws, Clearview sold for a profit access to billions of consumers' Faceprints to law enforcement agencies and private companies across the country. Consumers did not receive notice of this violation of their privacy rights, and they certainly have not consented to it – in writing or otherwise. Clearview and its customers, including law enforcement and each of their employees, staff, and any number of other people, may be able to access billions of consumers' identities, social connections, and other personal details based on the Faceprint created and sold by Clearview. As acknowledged by the co-director of the High-Tech Law Institute at Santa Clara University, the "weaponization possibilities of this are endless." Imagine a rogue employee of one of Clearview's customers who wants to stalk potential romantic partners, a foreign government using it to discover information to use to blackmail key individuals, or law enforcement agencies prying into the private lives of citizens with no probable cause or reasonable suspicion. The "dystopian future" of a mass surveillance state has arrived with the erosion of privacy for billions of people, and Clearview is at the helm.

_____

[1]      Web "scraping" (aka web harvesting or web data extraction) is data scraping used for extracting data from websites.  It is a form of copying, in which specific data is gathered/fetched and copied/processed from the web, typically into a central local database or spreadsheet, for later use.

HAEGGQUIST & ECK, LLP

5.     To redress the harms suffered, Plaintiffs, individually and on behalf of The Class and sub-classes (as defined herein below) bring claims for: (1) violation of California's Unfair Competition Law, Business & Professions Code § 17200, *et seq.* ("UCL") (predicated on, *inter alia*, violation of the California Consumer Privacy Act of 2018, California Civil Code § 1798.100, *et seq.* ("CCPA") (on behalf of Plaintiff Burke and the CCPA Class, Commercial Misappropriation Class, and Unjust Enrichment Class against all Defendants); (2) violation of California Civil Code § 3344(a) ("Commercial Misappropriation") (on behalf of Plaintiff Burke and the Commercial Misappropriation Class against all Defendants); (3) unjust enrichment (aka *"restitution"* or "quasi-contract") (on behalf of Plaintiff Burke and the Unjust Enrichment Class against Clearview); and (4) violation of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA") (on behalf of Plaintiff Pomerene and the BIPA Class against all Defendants).[2]

## JURISDICTION

6.     This Court has original jurisdiction over this action under 28 U.S.C. § 1332(a) as well as the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2) ("CAFA"), as to the named Plaintiffs and every member of The Class, because the proposed Class contains more than 100 members, the aggregate amount in controversy exceeds $5 million, and Class members reside in California and are therefore diverse from Defendants. The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).

7.     This Court has personal jurisdiction over Plaintiffs because Plaintiffs submit to the Court's jurisdiction for purpose of this Complaint. This Court has personal jurisdiction over Clearview because it does a substantial amount of business in California, including in this District; is authorized to conduct business

---

[2]     The Sub-Classes are defined below in Paragraphs 51-52 of the Complaint.

HAEGGQUIST & ECK, LLP

in California, including in this District; and/or has intentionally availed itself of the laws and markets of this District through the use, promotion, sale, marketing, and/or distribution of its products and services at issue in this Complaint.

8.     This Court has personal jurisdiction over Defendants Hoan Ton-That and Richard Schwartz because, as set forth in more detail below, they conspired with Clearview to further the illegal scheme alleged in this Complaint, which directly targeted and impacted thousands, if not millions, of California residents and citizens, including in this District. Defendants Ton-That and Schwartz consented to, authorized, and directed the business conduct at issue in California, including in this District and have availed themselves of the laws and markets of this District.

9.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claims occurred in this District. Venue is also proper under 18 U.S.C. § 1965(a), because Clearview transacts a substantial amount of its business in this District. Alternatively, venue is proper under 28 U.S.C. § 1391(b)(3) because this Court has personal jurisdiction over Defendants.

## THE PARTIES

### Plaintiff Sean Burke

10.     Plaintiff Sean Burke is a natural person and over the age of eighteen. Plaintiff Burke is, and at all relevant times has been, a resident and citizen of San Diego, California.

11.     Throughout the relevant period of this Complaint, numerous photographs that include images of Plaintiff Burke's face were uploaded to various internet-based platforms and websites, including on Facebook, Twitter, Instagram, Google, Venmo, and/or YouTube.

12.     Based on information and belief, Clearview "scraped" images of Plaintiff Burke's face from internet-based websites, in violation of several of the

HAEGGQUIST & ECK, LLP

websites' terms of use and stored them in its database. Clearview's software application then applied facial recognition software to the images of Plaintiff Burke's face, calculated his unique physical characteristics, and generated a biometric template therefrom. Clearview generated biometric information (a "Faceprint") enabling the identification of Plaintiff Burke, in direct violation of the laws identified in this Complaint, including the BIPA and CCPA. Clearview then sold access to its database containing Plaintiff Burke's photograph and Faceprint to third-party entities for commercial monetary gain in an amount to be determined at trial.

13.     Plaintiff Burke never consented, agreed, or gave permission – written or otherwise – to Clearview to collect, capture, purchase, receive through trade, obtain, sell, lease, trade, disclose, redisclose, disseminate, or otherwise profit from or use his photograph and biometric information and identifiers. Likewise, Clearview never informed Plaintiff Burke by written notice or otherwise that Plaintiff Burke could prevent Clearview from collecting, capturing, purchasing, receiving through trade, obtaining, selling, leasing, trading, disclosing, redisclosing, disseminating, or otherwise profiting from or using his photograph and biometric information and identifiers. Similarly, Plaintiff Burke was never provided with an opportunity to prohibit or prevent Clearview from collecting, capturing, purchasing, receiving through trade, obtaining, selling, leasing, trading, disclosing, redisclosing, disseminating, or otherwise profiting from or using his photograph and biometric information and identifiers.

14.     As a result of Clearview's unauthorized collecting, capturing, purchasing, receiving through trade, obtaining, selling, leasing, trading, disclosing, redisclosing, disseminating, or otherwise profiting from or using Plaintiff Burke's photograph and biometric information and identifiers, Plaintiff Burke was deprived of his control over that valuable and sensitive information. By depriving him of his control over this valuable information, Clearview misappropriated the

HAEGGQUIST & ECK, LLP

value of his photograph and biometric information and identifiers. Clearview has unlawfully profited therefrom. Plaintiff Burke has further suffered damages in the diminution in value of his sensitive biometric information and identifiers – information which is now at higher risk of privacy violations.

**Plaintiff James Pomerene**

15.     Plaintiff James (aka "Jim") Pomerene is a natural person and over the age of eighteen. Plaintiff Pomerene is, and at all relevant times has been, a resident and citizen of Rockford, Illinois.

16.     Throughout the relevant period of this Complaint, photographs that include images of Plaintiff Pomerene's face were uploaded to various internet-based platforms and websites, including Facebook, Twitter, Instagram, Google, Venmo, and/or YouTube.

17.     Based on information and belief, Clearview "scraped" images of Plaintiff Pomerene's face from internet-based websites, in violation of several of the websites' terms of use and stored them in its database. Clearview's software application then applied facial recognition software to the images of Plaintiff Pomerene's face, calculated his unique physical characteristics, and generated a biometric template therefrom. Clearview generated biometric information (a "Faceprint") enabling the identification of Plaintiff Pomerene, in direct violation of the laws identified in this Complaint, including the BIPA and CCPA. Clearview then sold access to its database containing Plaintiff Pomerene's photograph and Faceprint to third-party entities for a commercial monetary gain in an amount to be determined at trial.

18.     Plaintiff Pomerene never consented, agreed, or gave permission – written or otherwise – to Clearview to collect, capture, purchase, receive through trade, obtain, sell, lease, trade, disclose, redisclose, disseminate, or otherwise profit from or use his photograph and biometric information and identifiers. Likewise, Clearview never informed Plaintiff Pomerene by written notice or otherwise that

HAEGGQUIST & ECK, LLP

Plaintiff Pomerene could prevent Clearview from collecting, capturing, purchasing, receiving through trade, obtaining, selling, leasing, trading, disclosing, redisclosing, disseminating, or otherwise profiting from or using his photograph and biometric information and identifiers. Similarly, Plaintiff Pomerene was never provided with an opportunity to prohibit or prevent Clearview from collecting, capturing, purchasing, receiving through trade, obtaining, selling, leasing, trading, disclosing, redisclosing, disseminating, or otherwise profiting from or using his photograph and biometric information and identifiers.

19.     As a result of Clearview's unauthorized collecting, capturing, purchasing, receiving through trade, obtaining, selling, leasing, trading, disclosing, redisclosing, disseminating, or otherwise profiting from or using Plaintiff Pomerene's photograph and biometric information and identifiers, Plaintiff Pomerene was deprived of his control over that valuable and sensitive information. By depriving him of his control over this valuable information, Clearview misappropriated the value of his photograph and biometric information and identifiers. Clearview has unlawfully profited therefrom. Plaintiff Pomerene has further suffered damages in the diminution in value of his sensitive biometric information and identifiers – information which is now at higher risk of privacy violations.

## Defendant Clearview AI, Inc.

20.     Defendant Clearview AI, Inc., is a private, for-profit Delaware Corporation, with its principal place of business located in in New York, New York. Clearview markets its product throughout the United States, including in California and Illinois. Based on information and belief, a large majority of the websites and platforms from which Clearview illicitly scraped the images of faces of billions of consumers are owned and operated by California-based companies, such as Facebook.

21.     Defendant Clearview is a "private entity" within the meaning of the BIPA, which defines "private entity" as "any individual, partnership, corporation, [etc.] … however organized." 740 ULCS 14/10. Based on information and belief, Clearview is also a "business" within the meaning of the CCPA because: (i) it is a corporation; (ii) it operates for a profit or financial benefit of its shareholders or other owners; (iii) it does business in the State of California; (iv) it collects "consumers' personal information" and determines the purposes and means of the processing of consumers' personal information; and (v) it derives 50 percent or more of its annual revenues from selling consumers' personal information and/or its sells and/or shares for commercial purposes, alone or in combination, the personal information of 50,000 or more consumers. Defendant Clearview is also a "person" within the meaning of California's commercial misappropriation statute, Cal. Civ. Code § 3344. As set forth below, Plaintiffs, individually and on behalf of the Class, bring Counts I-IV against Clearview.

**Defendant Hoan Ton-That**

22.     Defendant Hoan Ton-That is a founder and Chief Executive Officer of Clearview. Defendant Ton-That is a "private entity" within the meaning of the BIPA, which defines "private entity" as "any individual, partnership, corporation, [etc.] … however organized." 740 ULCS 14/10. Defendant Ton-That is also a "person" within the meaning of California's commercial misappropriation statute, Cal. Civ. Code § 3344.

23.     As a founder and owner of Clearview, Defendant Ton-That knew of, participated in, consented to, approved, authorized, and directed the wrongful acts alleged in this Complaint. Based on information and belief, Defendant Ton-That conspired with Clearview and its other owners/shareholders, officers, and/or directors, including, without limitation, Defendant Richard Schwartz, to carry out the illegal scheme alleged in this Complaint. As set forth below, Plaintiffs bring Counts I, II and IV against Defendant Ton-That.

HAEGGQUIST & ECK, LLP

**Defendant Richard Schwartz**

24.    Defendant Richard Schwartz is a founder and, based on information and belief, an officer, director and/or principal of Clearview. Defendant Schwartz is a "private entity" within the meaning of the BIPA, which defines "private entity" as "any individual, partnership, corporation, [etc.] … however organized." 740 ULCS 14/10. Defendant Schwartz is also a "person" within the meaning of California's commercial misappropriation statute, Cal. Civ. Code § 3344.

25.    As a founder and officer, director, and/or principal of Clearview, Defendant Schwartz knew of, participated in, consented to, approved, authorized, and directed the wrongful acts alleged in this Complaint. Based on information and belief, Defendant Schwartz conspired with Clearview and its other owners/shareholders, officers, and/or directors, including, without limitation, Defendant Hoan Ton-That, to carry out the illegal scheme alleged in this Complaint. As set forth below, Plaintiffs bring Counts I, II and IV against Defendant Schwartz.

**Defendants Conspired Amongst Themselves and With Others to Carry Out the Unlawful Scheme**

26.    Defendants conspired amongst themselves and, based on information and belief, with the other owners, directors, officers, and/or shareholders of Clearview (the "Co-Conspirators"), to carry out the unlawful scheme, including the intentional torts. Defendants and the Co-Conspirators knew and/or had reason to know about Clearview's primary business function, which was to scrape the internet for images of faces, use facial recognition technology to generate biometric information and identifiers, and sell access of the same to third-party entities and agencies, without the consent of the consumers who's photographs and biometric information and identifiers were being used. Defendants and the Co-Conspirators agreed to this business plan – a plan, which when carried out, violated several laws, including, *inter alia*, the BIPA and California's commercial

CLASS ACTION COMPLAINT

misappropriation statute. Defendants and the Co-Conspirators intended to profit from the primary, albeit unlawful, business plan of Clearview.

27.   Defendants each had knowledge of the unlawful business purpose, consented to and authorized the fulfillment of the unlawful business purpose, and directed and otherwise carried out the unlawful business purpose of the unauthorized collecting, capturing, purchasing, receiving through trade, obtaining, selling, leasing, trading, disclosing, redisclosing, disseminating, or otherwise profiting from and/or using Plaintiffs' and the Class's photographs and biometric information and identifiers without their consent.

28.   Each of the Co-Conspirators are responsible as joint tortfeasors for all damages ensuing from the wrongful conduct carried out by Defendants. Each member of the conspiracy is liable for all acts done by others pursuant to the conspiracy, and for all damages caused thereby.

29.   The true names and capacities of defendants sued herein as Does 1 through 10, inclusive, are presently not known to Plaintiffs, who therefore sues these defendants by such fictitious names. Plaintiffs will seek to amend this complaint and include these Doe Defendants true names and capacities when they are ascertained. Each of the fictitiously named defendants is responsible in some manner for the conduct alleged herein and for the injuries suffered by Plaintiffs and The Class.

## FACTUAL ALLEGATIONS

### Biometrics and Privacy

30.   "Biometrics" refers to technologies used to identify an individual based on unique physical characteristics, *e.g*., "face geometry." Throughout the last several years, companies have developed facial recognition technology, which works by scanning an image for human faces, extracting facial feature data from the image, generating a "faceprint" through the use of facial-recognition

HAEGGQUIST & ECK, LLP

algorithms, and then comparing the resultant faceprint to other faceprints stored in a database. If a match is found, a person may be identified, including sensitive and confidential information about that person.

31. This technology has raised serious privacy concerns about its massive scope and surreptitiousness. For example, in 2011, Google's Chairman at the time said it was a technology the company held back on because it could be used "in a very bad way." U.S. Senator Markey recognized that widespread use of the technology "could facilitate dangerous behavior and could effectively destroy individuals' ability to go about their daily lives anonymously."

32. The Illinois Legislature has acknowledged that the "full ramifications of biometric technology are not fully known." 740 ILCS 14/5(f). It is known, however, that the "public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." 740 ILCS 14/5(g).

33. Biometrics are unlike other unique identifiers that are used to access finances or other sensitive information." 740 ILCS 14/5(c). For example, "social security numbers, when compromised, can be changed." *Id.* "Biometrics, however, are unique to the individual; therefore, once compromised, the individual has no recourse … [and] is at heightened risk for identity theft …." *Id.* Recognizing this problem, the Federal Trade Commission urged companies using facial recognition technology to ask for consent ***before*** scanning and extracting biometric data from photographs.[3] This prevailing view has been adopted by both the BIPA and the CCPA, which require notice to and consent from the person who's biometric identifier or information is being used. Unfortunately, Clearview

---

[3] *See Facing Facts: Best Practices for Common Uses of Facial Recognition Technologies*, Federal Trade Commission (Oct.2012), *available at* http://www.ftc.gov/sites/default/files/documents/reports/facing-facts-best practices-common-uses-facial-recognitiontechnologies/121022facialtechrpt.pdf.

could care less about the prevailing view or these laws and failed to obtain user consent before launching its wide-spread facial recognition program and continues to violate millions of California and Illinois residents' legal privacy rights.

### California's Consumer Privacy Act of 2018 ("CCPA") (via UCL)

34.     Under the CCPA, a "business that collects a consumer's personal information shall, ***at or before*** the point of collection, inform consumers as to the categories of personal information to be collected and the purposes for which the categories of personal information shall be used." Cal. Civ. Code § 1798.100(b). "A business shall not collect additional categories of personal information or use personal information collected for additional purposes without providing the consumer with notice consistent with this section." *Id.*

35.     The statute defines "personal information" as any "information that identifies, relates to, describes, is reasonably capable of being associated with, or could reasonable be linked, directly or indirectly, with a particular consumer or household." Cal. Civ. Code § 1798.140(o)(1). Personal information includes, but is not limited to, "[b]iometric information." Cal. Civ. Code § 1798.140(o)(1)(E). "Biometric information" means an individual's physiological, biological, or behavioral characteristics, including an individual's deoxyribonucleic acid (DNA), that can be used, singly or in combination with each other or with other identifying data, to establish individual identity." Cal. Civ. Code 1798.140(b). "Biometric information includes, but is not limited to, imagery of the iris, retina, fingerprint, ***face***, hand, [etc.] … from which an identifier template, such as a faceprint … can be extracted …." *Id.* (emphasis added).

### Illinois's Biometric Information Privacy Act ("BIPA")

36.     The BIPA was enacted in 2008. Under the BIPA, companies may not "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier . . . unless it first:

HAEGGQUIST & ECK, LLP

(1) informs the subject . . . in writing that a biometric identifier . . . is being collected or stored;

(2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier . . . is being collected, stored, and used; and

(3) receives a written release executed by the subject of the biometric identifier . . . ."

740ILCS 14/15(b).

37.    The statute defines "biometric identifier" to include "retina or iris scan, fingerprint, voiceprint, or scan of hand or *face geometry*." 740 ILCS 14/10. "Biometric Information' means any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." *Id*

38.    The BIPA also regulates how companies must handle Illinois residents' biometric identifiers and information. 740 ILCS 14/15(c)-(d). For example, the law prohibits selling, leasing, trading, or otherwise profiting from a person's biometric data. 704 ILCS 14/15(c). The BIPA also requires companies like Clearview to develop a publicly available written policy establishing a retention schedule and guidelines for permanently destroying biometric data. 740 ILCS 14/15(a).

**Clearview Knowingly and Intentionally Violated the BIPA and CCPA**

39.    As explained below, Defendants unlawfully collected, captured, purchased, received through trade, obtained, sold, leased, traded, disclosed, redisclosed, disseminated, and/or otherwise profited from or used Plaintiffs' and The Class's photographs and biometric information and identifiers in violation of the CCPA, BIPA, and California's law against Commercial Misappropriation.

HAEGGQUIST & ECK, LLP

Clearview has been described by the media as the "secretive company that might end privacy as we know it."[4]

40.    Clearview uses a software application to illicitly and secretly scrape billions of images from websites such as Twitter, Facebook, Venmo, Google, Instagram and YouTube, in violation of many of the websites' policies.  Indeed, companies such as Facebook and Twitter have sent Clearview cease and desist letters.

41.    Clearview's software application then applies facial recognition software to the illicitly scraped images, whereby the company uses artificial intelligence algorithms to scan the facial geometry of faces in the images. The algorithm calculates an individual face's unique physical characteristics, which result in a biometric template that is separate and distinct from the image from which it was created. Clearview describes the technology as a "state-of-the-art neural net" to convert all images into mathematical formulas, or "vectors," based on facial geometry – like how far apart a person's eyes are. This process generates biometric information enabling the identification of the individuals in the images (herein referred to as individuals' "Faceprint"), in direct violation of the BIPA and CCPA. Defendants engage in this process without notifying any of the individuals whose images Clearview has captured, converted into a Faceprint, stored, and shared for a profit. Defendants certainly have not obtained these individuals' consent – written or otherwise.

42.    Once Defendants generate the biometric information for millions of people, Clearview sells access to the database to law enforcement agencies and private companies. Instead of having limited photo arrays, agencies and private companies are now able to use Clearview's database of three billion photos:

---

[4]    *See, e.g.,* Kshmir Hill, "*The Secretive Company That Might End Privacy as We Know It*". New York Times. Jan. 18, 2020.  ISSN 0362-4331. Retrieved 2020-02-18.

HAEGGQUIST & ECK, LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14

HAEGGQUIST & ECK, LLP



A chart from marketing materials that Clearview provided to law enforcement. Clearview

43.    Based on information and belief, very few individuals have been arrested, much less convicted, using Clearview's database. Yet, these agencies and private companies have instantaneous access to the biometric information of billions of people allowing them to peep into almost every aspect of their digital lives, including who they associate with and where they live.

44.    It has also been reported that Defendants have real-time access to monitor which individuals the law enforcement agencies are searching for. For example, an investigative journalist from the New York Times who was doing a story on Clearview had a law enforcement agency upload images of his face and run it through Clearview's application. Soon thereafter, the agency received calls from Clearview asking if it was talking to the media – a clear sign Clearview has the ability and appetite to monitor whom law enforcement is searching for.

45.    In addition, based on information and belief, the computer code underlying Clearview's software application includes programmable language to

enable it to pair with augmented reality glasses. This tool potentially enables any user wearing the glasses to identify in real-time every person they see as they walk down the street, potentially revealing not just their names, but where they live, what they like to do, and who they know and associate with.

46. Moreover, it has been shown that Clearview cannot adequately safeguard the biometric information and identifiers of Plaintiffs and the Class. On February 26, 2020, it was publicly reported that there was a data breach of Clearview's client list and other information.

47. The result of Clearview's technology is not a safer society by enabling law enforcement access to a broader database from which can lead to the capture of criminals. The result is a profit machine for a single company that relies on the secret use of individual's biometric information. This is a radical evasion and erosion of privacy. Defendants are laying the groundwork for a dystopian future and violating, *inter alia*, the BIPA and CCPA in the process.

## CLASS ACTION ALLEGATIONS

48. Plaintiffs reallege and incorporate herein by reference each allegation in the preceding and subsequent paragraphs.

49. Plaintiffs bring this action individually and on behalf of a class of similarly situated individuals pursuant to Rule 23 of the Federal Rules of Civil Procedure.

50. As used herein, the following terms have the meanings set forth below:

(a) "California Biometric Information" means an "individual's physiological, biological, or behavioral characteristics, including an individual's deoxyribonucleic acid (DNA), that can be used, singly or in combination with each other or with other identifying data, to establish individual identity" as defined under CCPA, Cal. Civ. Code § 1798.140(b).

HAEGGQUIST & ECK, LLP

(b)   "Illinois Biometric Information" means "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual" as defined in the BIPA, 740 ILCS 14/10.

(c)   "Photograph" means "any photographic or photographic reproduction, still or moving, or any videotape or live television transmission, of any person, such that the person is identifiable" as defined by Cal. Civ. Code § 3344(b).

51.   Plaintiff Burke seeks to represent the following classes of persons:

(a)   **Sub-Class One (the "CCPA Class") (Cal. Civ. Code § 1798.100, et seq**):

> All persons who, while residing in California, had their California Biometric Information collected and/or used by Clearview without prior notice by Clearview and without their consent.

(b)   **Sub-Class Two (the "Commercial Misappropriation Class") (Cal. Civ. Code § 3344):**

> All persons who, while residing in California, had their Photograph or likeness knowingly used by Clearview for commercial gain without their consent.

(c)   **Sub-Class Three (the "Unjust Enrichment Class"):**

> All persons who, while residing in California, had their California Biometric Information misappropriated by Clearview from which Clearview was unjustly enriched.

52.   Plaintiff Pomerene seeks to represent the following class of persons:

(a)   **Sub-Class Four (the "BIPA Class") (740 ILCS 14/1, *et seq.*):**

> All persons who, while residing in Illinois, had their Illinois Biometric Information collected, captured, purchased, received, obtained, sold, leased, traded, disclosed, redisclosed, disseminated,

HAEGGQUIST & ECK, LLP

CLASS ACTION COMPLAINT

and/or otherwise profited from and/or used by Clearview without their consent.

53.    Collectively, the four sub-classes are herein referred to as "The Class."

54.    Excluded from The Class are Clearview, their officers and directors, families, owners, and legal representatives, heirs, successors, or assigns, and any entity in which Clearview have a controlling interest, and any Judge assigned to this case and their immediate families.

55.    Plaintiffs reserve the right to amend or modify the class definition in connection with their motion for class certification, as a result of discovery, at trial, or as otherwise allowed by law.

56.    Plaintiffs bring this action individually and on behalf of all others similarly situated because there is a well-defined community of interest in the litigation and the proposed sub-classes are easily ascertainable.

### Numerosity

57.    The potential members of The Class, and each of the four sub-classes independently, are so numerous joinder of all the members is impracticable. While the precise number of members of The Class, or each of the four sub-classes, has not been determined, Plaintiffs are informed and believe The Class, and each of the four-sub classes, include at least thousands (and potentially even millions) of individuals.

58.    Based on information and belief, Clearview's records evidence the number and location of The Class, and each of the four sub-classes, respectively.

### Commonality and Predominance

59.    There are questions of law and fact common to The Class that predominate over any questions affecting only individual class members. These common questions of law and fact include, without limitation:

HAEGGQUIST & ECK, LLP

(a)     Whether Clearview collected, captured, received, or otherwise obtained Plaintiff Pomerene's and the BIPA Class's Illinois Biometric Information;

(b)     Whether Clearview has sold, leased, traded, or otherwise profited from Plaintiff Pomerene's and the BIPA Class's Illinois Biometric Information;

(c)     Whether Clearview disclosed, redisclosed, or otherwise disseminated Plaintiff Pomerene's and the BIPA Class's Illinois Biometric Information;

(d)     Whether Clearview properly informed Plaintiff Pomerene's and the BIPA Class that it collected, captured, purchased, received, obtained, sold, leased, traded, disclosed, redisclosed, disseminated, and/or otherwise profited from and/or used their Illinois Biometric Information;

(e)     Whether Clearview obtained a written release (as defined in 740 ILCS 14/10) from Plaintiff Pomerene and the BIPA Class to collect, capture, or otherwise obtain their biometric identifiers;

(f)     Whether Clearview made publicly available to Plaintiff Pomerene and the BIPA Class, a written policy establishing a retention schedule and guidelines for permanently destroying Illinois Biometric Information in compliance with the BIPA;

(g)     Whether Clearview's violations of the BIPA were committed intentionally, recklessly, or negligently;

(h)     Whether Clearview collected and/or used Plaintiff Burke's and the CCPA Class's California Biometric Information without first providing notice of such collection and/or use;

(i)     Whether Clearview knowingly used the Photograph and/or likeness of Plaintiff Burke and the Commercial Misappropriation Class for commercial gain without their consent;

CLASS ACTION COMPLAINT

(j)     Whether Clearview was unjustly enriched by the misappropriation of Plaintiff Burke's and the Unjust Enrichment Class's California Biometric Information;

(k)     Whether Defendants conspired for the purpose of accomplishing some concerted action either for an unlawful purpose or lawful purpose by unlawful means; and

(l)     Whether Plaintiffs and The Class have been harmed and the proper measure of relief.

## Typicality

60.     The claims of Plaintiffs are typical of the claims of The Class. Plaintiffs and all members of The Class sustained injuries and damages arising out of and caused by Clearview's common course of conduct in violation of laws, regulations that have the force and effect of law, and statutes as alleged herein.

## Adequacy of Representation

61.     Plaintiffs will fairly and adequately represent and protect the interests of The Class. Counsel who represents Plaintiffs are competent and experienced in litigating large consumer class actions.

## Superiority of Class Action

62.     A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of The Class is not practicable, and questions of law and fact common to The Class predominate over any questions affecting only individual members of The Class. Each member of The Class has been damaged and is entitled to recovery because of Clearview's uniform unlawful policy and/or practices described herein. There are no individualized factual or legal issues for the court to resolve that would prevent this case from proceeding as a class action. Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient

HAEGGQUIST & ECK, LLP

and economical for the parties and the judicial system. Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## COUNT I
**Unlawful and Unfair Business Practices**
**In Violation of Bus. & Prof. Code §§ 17200,** *et seq.*
**(On Behalf of Plaintiff Burke and The CCPA Class, the Commercial Misappropriation Class, and the Unjust Enrichment Class against All Defendants)**

63.     Plaintiffs hereby reallege and incorporate by reference the allegations contained in the paragraphs above, as if fully set forth herein.

64.     Defendants engaged in unlawful activity prohibited by the UCL. The actions of Defendants as alleged within this Complaint constitute unlawful and unfair business practices with the meaning of the UCL.

65.     Defendants have conducted the following unlawful activities:

(a)     Violations of the CCPA, Civil Code § 1798.100(b) (Defendant Clearview); and

(b)     Violations of Commercial Misappropriation, Cal. Civ. Code § 3344(a) (all Defendants).

66.     The statutory requirements for Commercial Misappropriation under Cal. Civ. Code § 3344, including how Defendants violated that law, are set forth in detail in Count II herein below.

67.     With respect to Clearview's violation of the CCPA, a "business that collects a consumer's personal information shall, at or before the point of collection, inform consumers as to the categories of personal information to be collected and the purposes for which the categories of personal information shall be used." Cal. Civ. Code § 1798.100(b). "A business shall not collect additional categories of personal information or use personal information collected for

HAEGGQUIST & ECK, LLP

1    additional purposes without providing the consumer with notice consistent with

2    this section." *Id.*

3         68.    The CCPA defines "personal information" as any "information that

4    identifies, relates to, describes, is reasonably capable of being associated with, or

5    could reasonable be linked, directly or indirectly, with a particular consumer or

6    household." Cal. Civ. Code § 1798.140(o)(1). Personal information includes, but

7    is not limited to, "[b]iometric information." Cal. Civ. Code § 1798.140(o)(1)(E).

8    "Biometric information" means an individual's physiological, biological, or

9    behavioral characteristics, including an individual's deoxyribonucleic acid

10   (DNA), that can be used, singly or in combination with each other or with other

11   identifying data, to establish individual identity." Cal. Civ. Code § 1798.140(b).

12   "Biometric information includes, but is not limited to, imagery of the iris, retina,

13   fingerprint, *face*, hand, [etc.] … from which an identifier template, such as a

14   faceprint … can be extracted …." *Id.* (emphasis added).

15        69.    As set forth in detail elsewhere in this Complaint, Clearview collected

16   Plaintiff Burke's and the CCPA Class's "personal information" as defined in the

17   CCPA and failed to inform Plaintiff Burke and the CCPA Class of the same at or

18   before the point of collection. Accordingly, Clearview violated the CCPA.

19   Clearview also engaged in Commercial Misappropriation as detailed in Count II

20   herein below.

21        70.    In addition to constituting "unlawful conduct" in violation of the

22   above-noted laws, Clearview's activities also constitute unfair practices in

23   violation of the UCL because Clearview's practices violate an established public

24   policy, and/or the practice is immoral, unethical, oppressive, unscrupulous, and

25   substantially injurious to Plaintiff Burke, the CCPA Class, and the Commercial

26   Misappropriation Class.

27        71.    Because of Defendants' violations of the identified laws, Plaintiff

28   Burke, the CCPA Class, and the Commercial Misappropriation Class have

HAEGGQUIST & ECK, LLP

suffered injury-in-fact and have lost money or property. Plaintiff Burke, the CCPA Class, and the Commercial Misappropriation Class are entitled to restitution, restitutionary disgorgement, an injunction, declaratory, and other equitable relief against such unlawful practices to prevent future harm for which there is no adequate remedy at law.

72. As a direct and proximate result of the unfair business practices of Defendants, Plaintiff Burke, the CCPA Class, and the Commercial Misappropriation Class are entitled to equitable and injunctive relief, including restitutionary disgorgement of the value of Plaintiff Burke's, the CCPA Class's, and the Commercial Misappropriation Class's California Biometric Information and Photographs and/or likeness which have been unlawfully misappropriated by Clearview. Defendants should be enjoined and cease and desist from engaging in the practices described herein for the maximum time permitted pursuant to Bus. & Prof. Code § 17208, including any tolling.

73. The unlawful and unfair conduct alleged herein is continuing, and there is no indication that Defendants will refrain from such activity in the future. Plaintiffs believe and allege that if Defendants are not enjoined from the conduct set forth in this Complaint, they will continue to violate California and Illinois laws. Plaintiffs further request that the court issue a preliminary and permanent injunction.

74. Plaintiffs are also entitled to and hereby claim attorneys' fees and costs, pursuant to the private attorney general theory doctrine (Code of Civil Procedure § 1021.5), and any other applicable provision for attorney fees and costs, based upon the violation of the underlying public policies.

**COUNT II**
**Commercial Misappropriation**
**In Violation of California Cal. Civ. Code § 3344(a)**
**(On Behalf of Plaintiff Burke and The Commercial Misappropriation Class against All Defendants)**

75.     Plaintiffs hereby reallege and incorporate by reference the allegations contained in the paragraphs above, as if fully set forth herein.

76.     Pursuant to California Civil Code § 3344(a) it is unlawful for any person to knowingly use "another's name, voice, signature, photograph, or likeness, in any manner … without such person's prior consent …."

77.     Any person who violates this section shall be liable to the injured party or parties "in an amount equal to the greater of seven hundred fifty dollars ($750) or the actual damages suffered by him or her as a result of the unauthorized use, and any profits from the unauthorized use that are attributable to the use and are not taken into account in computing the actual damages." Cal. Civ. Code § 3344(a); *See Orthopedic Systems, Inc. v. Schlein,* 202 Cal. App. 4th 529, 547 (2001) ("We hold that under section 3344(a), an injured party may recover either the amount of damages specified in the statute or actual damages, whichever is greater, as well as profits from the unauthorized use.").

78.     Plaintiff Burke and the Commercial Misappropriation Class had Photographs (as defined in Cal. Civ. Code § 3344(b)) posted to various websites on the internet, including on Facebook, Twitter, Google, Instagram, Venmo, and YouTube, under the terms and conditions governing those sites.

79.     Without providing notice to, and/or obtaining consent from, Plaintiff Burke and the Commercial Misappropriation Class, Defendants knowingly and illicitly obtained Photographs of Plaintiff Burke and the Commercial Misappropriation Class by scraping the internet in violation of many of the websites' policies which prohibited such conduct. Without notice to, and/or consent from, Plaintiff Burke and the Misappropriation Class, Defendants

HAEGGQUIST & ECK, LLP

25

1  knowingly used their Photographs and likeness to its advantage by selling access

2  to them to third-party entities for a commercial gain.

3        80.    The use of Plaintiff Burke's and the Commercial Misappropriation

4  Class's Photographs and likeness by Defendants did not have any connection with

5  any news, public affairs, sports broadcast or account, or any political campaign.

6        81.    "Shareholders, officers, and directors of corporations" may be "held

7  personally liable for intentional torts when they knew or had reason to know about

8  but failed to put a stop to tortious conduct." *Asahi Kasei Pharma Corp. v. Actelion*

9  *Ltd.,* 222 Cal. App. 4th 945, 966 (2013). In addition, all persons "who are shown

10  to have participated in an intentional tort are liable for the full amount of the

11  damages suffered." *Id.* Defendants Hon-That and Schwartz knew of, consented to,

12  directed, and/or authorized the tortious conduct and failed to put a stop to it.

13        82.    As a direct and proximate result of Defendants' conduct, Plaintiff

14  Burke and the Commercial Misappropriation Class have been harmed in an

15  amount to be proven at the time of trial.

16        83.    Plaintiff Burke and the Commercial Misappropriation Class are also

17  entitled to claim recovery of costs and reasonable attorneys' fees pursuant to Cal.

18  Civ. Code § 3344(a).

19                               **COUNT III**

**Unjust Enrichment / Restitution**

20  **(On Behalf of Plaintiff Burke and The Unjust Enrichment Class against**

21  **Defendant Clearview)**

22        84.    Plaintiffs hereby reallege and incorporate by reference the allegations

23  contained in the paragraphs above, as if fully set forth herein.

24        85.    Clearview was unjustly enriched by its unlawful misappropriation of

25  Plaintiff Burke's and the Unjust Enrichment Class's California Biometric

26  Information, Photographs, and likeness. Through its unlawful conduct, Clearview

27  received and retained a benefit it otherwise would not have achieved. By depriving

28  Plaintiff Burke and the Unjust Enrichment Class of control over their valuable

*Vertical left margin:* HAEGGQUIST & ECK, LLP

26

Biometric Information, Clearview took control of and misappropriated the value of their California Biometric Information. Clearview's conduct also exposed Plaintiff Burke and the Unjust Enrichment Class to a heightened risk of an invasion of their privacy.

86.    There is not another adequate remedy at law.  It would be unjust and unfair for Clearview to retain any of the benefits obtained from its unlawful misappropriation of Plaintiff Burke's and the Unjust Enrichment Class's California Biometric Information.

87.    Clearview should be ordered to disgorge the proceeds that it unjustly received from the misappropriation of Plaintiff Burke's and the Unjust Enrichment Class's California Biometric Information.

**COUNT IV**
**Violation of the BIPA**
**740 ILCS §14/1, *et seq*.**
**(On Behalf of Plaintiff Pomerene and The BIPA Class against all Defendants)**

88.    Plaintiffs hereby reallege and incorporate by reference the allegations contained in the paragraphs above, as if fully set forth herein.

89.    Clearview violated the following sections of the BIPA:

(a)    740 ILCS 14/15(a);

(b)    740 ILCS 14/15(b);

(c)    740 ILCS 14/15(c); and

(d)    740 ILCS 14/15(d).

90.    Section 15(a) of the BIPA requires that any "private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or

information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first." 740 ILCS 14/15(a).

91. Section 15(b) of the BIPA makes it unlawful for any private entity to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information …." 740 ILCS 14/15(b).

92. Section 15(c) of the BIPA makes it unlawful for any private entity to, among other things, "sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information." 740 ILCS 14/15(c).

93. Section 15(d) of the BIPA makes it unlawful for any private entity to, among other things, "disclose, redisclose, or otherwise disseminate a person's or a customer's biometric identifier or biometric information unless: (1) the subject of the biometric identifier or biometric information … consents to the disclosure or redisclosure; (2) the disclosure or redisclosure completes a financial transaction requested by the subject of the biometric identifier or the biometric information …; (3) the disclosure or redisclosure is required by State or federal law or municipal ordinance; or (4) the disclosure is required pursuant to a valid warrant or subpoena issued by a court of competent jurisdiction." 740 ILCS 14/15(d).

94. Clearview violated Sections 15(a)-(d) of the BIPA. Preliminarily, Clearview is a Delaware corporation and thus qualifies as a "private entity" under the BIPA. 740 ILCS 14/10. Defendants Ton-That and Schwartz are "individuals" and, thus, are each a "private entity" under the BIPA. *Id.*

95. Plaintiffs' and The Class's Faceprints are "biometric identifiers" and "biometric information" pursuant to 740 ILCS 14/10.

96. During the relevant period, Clearview did not make available to the public a written policy establishing a retention schedule and guidelines for permanently destroying Plaintiff Pomerene's and the BIPA Class's biometric identifiers and biometric information as specified by the BIPA. 740 ILCS 14/15(a). Thus, Clearview violated Section 15(a) of the BIPA.

97. Clearview systematically and automatically collected, captured, purchased, received, and/or otherwise obtained the BIPA Class's biometric identifiers and/or biometric information without first obtaining the specific written release required by 740 ILCS 14/15(b)(3). Likewise, Clearview did not properly inform Plaintiff Pomerene or the BIPA Class in writing that their biometric identifiers and/or biometric information were being collected, captured, purchased, received, and/or otherwise obtained, nor did it inform them in writing of the specific purpose and length of term for which their biometric identifiers and/or biometric information were being collected, captured, purchased, received, and/or otherwise obtained as required by 740 ILCS 14/15(b)(1)-(2). Thus, Clearview violated Section 15(b) of the BIPA.

98. Clearview knowingly sold, leased, traded, and/or otherwise profited from Plaintiff Pomerene's and the BIPA Class's biometric identifiers and/or biometric information. Thus, Clearview violated Section 15(c) of the BIPA.

99. Clearview also disclosed, redisclosed, and/or otherwise disseminated Plaintiff Pomerene's and the BIPA Class's biometric identifiers and/or biometric information without obtaining the consent from Plaintiff Pomerene and the BIPA Class and/or their authorized representatives. The disclosure, redisclosure, and/or dissemination by Clearview of Plaintiff Pomerene's and the BIPA Class's biometric identifiers and/or biometric information was not to complete a financial transaction requested or authorized by Plaintiff Pomerene or members of the BIPA

HAEGGQUIST & ECK, LLP

29

Class, nor was the disclosure and/or redisclosure required by State or federal law, municipal ordinance, or required pursuant to a valid warrant or subpoena issued by a court of competent jurisdiction. Thus, Clearview violated Section 15(d) of the BIPA.

100. Defendants Ton-That and Schwartz conspired with Clearview and the Co-Conspirators to carry out the unlawful scheme set forth above. They each had direct knowledge of the scheme, and consented, participated, directed, and otherwise assisted in carrying out the unlawful scheme. Based on information and belief, Defendants are continuing to direct and carry out the unlawful scheme.

101. Plaintiff Pomerene and the BIPA Class have been directly harmed by Clearview's violations of Sections 15(a)-(d) of the BIPA. They have been deprived of their control over their valuable information, and otherwise suffered monetary and non-monetary losses. By depriving Plaintiff Pomerene and the BIPA Class of control over their valuable information, Clearview misappropriated the value of their biometric identifiers and/or biometric information. Based on information and belief, Clearview has profited from its unlawful conduct.

102. On behalf of Plaintiff Pomerene and the BIPA Class, Plaintiffs seek: (i) injunctive and equitable relief as necessary to protect the interests of Plaintiff Pomerene and the BIPA Class by requiring Clearview to comply with the BIPA's requirements; (ii) statutory damages of $5,000 per intentional or reckless violation of the BIPA pursuant to 740 ILCS 14/20(2) and statutory damages of $1,000 per negligent violation of the BIPA pursuant to 740 ILCS 14/20(1); and (iii) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

## PRAYER FOR RELIEF

103. Wherefore, Plaintiffs, individually and on behalf of The Class, respectfully request that this Court enter an Order:

HAEGGQUIST & ECK, LLP

A.      Certifying this case as a class action on behalf of the four sub-classes defined above, appointing Plaintiffs as the representatives of the Class, and appointing their counsel as Class Counsel;

B.      Declaring that Defendants' actions, as set out above, violate the BIPA, 740 ILCS 14/1, *et seq.*;

C.      Declaring that Clearview's actions, as set out above, violates the CCPA, Cal. Civ. Code §1798.100, *et seq.*;

D.      Declaring that Defendants' actions, as set out above, violate California's commercial misappropriation statute, Cal. Civ. Code § 3344(a);

E.      Declaring that Defendants' actions, as set out above, violate California's UCL, Bus. & Prof. Code §17200, *et seq.*;

F.      Awarding compensatory, non-compensatory, statutory, exemplary, and punitive damages;

G.      Awarding statutory damages of $5,000 per intentional or reckless violation of the BIPA pursuant to 740 ILCS 14/20(2) and statutory damages of $1,000 per negligent violation of the BIPA pursuant to 740 ILCS 14/20(1);

H.      Awarding either the amount of damages specified in the statute or actual damages, whichever is greater, as well as profits from the unauthorized use pursuant California's commercial misappropriation statute, Cal. Civ. Code § 3344(a);

I.      Awarding restitution of all monies, expenses, and costs due to Plaintiffs and The Class;

J.      Awarding restitutionary disgorgement from the unlawful and unfair business practices in violation of Bus. & Prof. Code §§ 17200, *et seq.*;

K.      Awarding Plaintiffs and the Class their reasonable attorneys' fees, costs and litigation expenses;

HAEGGQUIST & ECK, LLP

L.    Awarding Plaintiffs and the Class per- and post-judgement interest, to the extent allowable;

M.    Awarding injunctive and other equitable relief as necessary to protect the interests of the Class, including, among other things, an order requiring Clearview to comply with the BIPA and CCPA; and

N.    Awarding such other and further relief as equity and justice may require.

## JURY DEMAND

Plaintiffs, individually, and on behalf of The Class, hereby demand trial by jury on all issues so triable.

Dated: February 27, 2020

HAEGGQUIST & ECK, LLP
AMBER L. ECK (177882)
ALREEN HAEGGQUIST (221858)
AARON M. OLSEN (259923)
IAN PIKE (329183)

By: _____
AARON M. OLSEN

225 Broadway, Suite 2050
San Diego, CA  92101
Telephone: 619-342-8000
Facsimile: 619-342-7878
aarono@haelaw.com

Counsel for Plaintiffs and the Proposed Class

CLASS ACTION COMPLAINT