HAEGGQUIST & ECK, LLP
AMBER L ECK (177882)
  ambere@haelaw.com
ALREEN HAEGGQUIST (221858)
  alreenh@haelaw.com
AARON M. OLSEN (259923)
  aarono@haelaw.com
IAN PIKE (329183)
  ianp@haelaw.com
225 Broadway, Suite 2050
San Diego, CA  92101
Telephone: 619-342-8000
Facsimile: 619-342-7878

Attorneys for Plaintiffs and the Proposed Class

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEAN BURKE and JAMES POMERENE, Individually and on Behalf of All Others Similarly Situated, | Case No.: 3:20-cv-00370-BAS-MSB <br><br> CLASS ACTION |
| Plaintiffs, <br><br> v. | FIRST AMENDED CLASS ACTION COMPLAINT |
| CLEARVIEW AI, INC., a Delaware Corporation; HOAN TON-THAT, an Individual; RICHARD SCHWARTZ, an Individual; and DOES 1 through 10, inclusive, | |
| Defendants. | DEMAND FOR JURY TRIAL |

1
2
3
4
5
6
7
8
9

Plaintiffs Sean Burke and James Pomerene ("Plaintiffs"), by their attorneys, bring this action individually and on behalf of all others similarly situated (the "Class") against Defendants Clearview AI, Inc. ("Clearview"), Hoan Ton-That, Richard Schwartz, and DOES 1 through 10, inclusive (collectively, "Defendants"). Plaintiffs make the following allegations upon information and belief (except those allegations as to the Plaintiffs or their attorneys, which are based on personal knowledge), based upon an investigation that is reasonable under the circumstances, which allegations are likely to have evidentiary support after a reasonable opportunity for further investigation and/or discovery.

10

**NATURE OF ACTION**

11
12
13

1.     The disturbing conduct at issue in this Complaint was highlighted in a letter by Senator Edward J. Markey to Clearview about its use of technology to collect, generate, and sell consumers' biometric information without their consent:

14
15
16

"Widespread use of your technology could facilitate dangerous behavior and could effectively destroy individuals' ability to go about their daily lives anonymously."

17

"The ways in which this technology could be weaponized are vast and disturbing."

18
19
20
21
22

2.     As warned by Senator Markey, "[a]ny technology with the ability to collect and analyze individuals' biometric information has alarming potential to impinge on the public's civil liberties and privacy." *Id.* Indeed, Defendants' use of Clearview's technology does just that and violates California's and Illinois's privacy protection statutes, among other laws.

23
24
25
26

3.     Without notice or consent, Clearview illicitly "scraped" hundreds, if not thousands or more, websites, such as Facebook, Twitter, and Google, for over three billion images of consumers' faces.[1] Clearview's automated scraping for

27
28

---

[1]     Web "scraping" (aka web harvesting or web data extraction) is data scraping used for extracting data from websites. It is a form of copying, in which specific

HAEGGQUIST & ECK, LLP

images violated the policies of websites like Facebook and Twitter, the latter of which specifically prohibits scraping to build facial recognition databases. Unlawfully, Defendants stored billions of scraped images of faces in Clearview's database, used its facial recognition software to generate biometric information (aka a "Faceprint") to match the face to identifiable information, and then sold access to the database to third-party entities and agencies for a commercial gain.

4.     In clear violation of multiple privacy laws, Clearview sold for a profit access to billions of consumers' Faceprints to law enforcement agencies and private companies across the country, including in California. Consumers did not receive notice of this violation of their privacy rights, and they certainly have not consented to it – in writing or otherwise. Clearview and its customers, including law enforcement and each of their employees, staff, and any number of other people, may be able to access billions of consumers' identities, social connections, and other personal details based on the Faceprint created and sold by Clearview. As acknowledged by the co-director of the High-Tech Law Institute at Santa Clara University, the "weaponization possibilities of this are endless." Imagine a rogue employee of one of Clearview's customers who wants to stalk potential romantic partners, a foreign government using it to discover information to use to blackmail key individuals, or law enforcement agencies prying into the private lives of citizens with no probable cause or reasonable suspicion. The "dystopian future" of a mass surveillance state has arrived with the erosion of privacy for billions of people, and Clearview is at the helm.

5.     To redress the harms suffered, Plaintiffs, individually and on behalf of The Class and sub-classes (as defined herein below) bring claims for: (1) violation of California's Unfair Competition Law, Business & Professions Code

data is gathered/fetched and copied/processed from the web, typically into a central local database or spreadsheet, for later use.

Case No. 3:20-cv-00370-BAS-MSB

FIRST AMENDED CLASS ACTION COMPLAINT

HAEGGQUIST & ECK, LLP

§17200, *et seq.* ("UCL") (predicated on, *inter alia*, violation of the California Consumer Privacy Act of 2018, California Civil Code §1798.100, *et seq.* ("CCPA") (on behalf of Plaintiff Burke and the CCPA Class, Commercial Misappropriation Class, and Unjust Enrichment Class against all Defendants); (2) violation of California Civil Code §3344(a) ("Commercial Misappropriation") (on behalf of Plaintiffs and the Commercial Misappropriation Class against all Defendants); (3) unjust enrichment (aka *"restitution"* or "quasi-contract") (on behalf of Plaintiff Burke and the Unjust Enrichment Class against Defendant Clearview); and (4) violation of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA") (on behalf of Plaintiffs and the BIPA Class against all Defendants).[2]

## JURISDICTION

6.     This Court has original jurisdiction over this action under 28 U.S.C. §1332(a) as well as the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d)(2), as to the named Plaintiffs and every member of The Class, because the proposed Class contains more than 100 members, the aggregate amount in controversy exceeds $5 million, and Class members reside in California and are therefore diverse from Clearview. The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367(a).

7.     This Court has personal jurisdiction over Plaintiffs because Plaintiffs submit to the Court's jurisdiction for the purpose of this Complaint. This Court has personal jurisdiction over Clearview because it does a substantial amount of business in California, including in this District; is authorized to conduct business in California, including in this District; and/or has intentionally availed itself of the laws and markets of this District through the use, promotion, sale, marketing, and/or distribution of its products and services at issue in this Complaint.

HAEGGQUIST & ECK, LLP

---

[2]     The Sub-Classes are defined below in Paragraphs 51-52 of the Complaint.

Defendants' liability to Plaintiffs and the Class arises from and relates to Defendants' conduct within the state of California. As set forth, *infra*, Defendants acted within California to collect the biometric information of Plaintiffs and persons throughout the United States. Defendants put this biometric information, collected within the state of California, to commercial use throughout the United States, including within the states of California and Illinois. Further, Defendants harvest the biometric information of Plaintiffs and persons throughout the United States, wherever that biometric information is harvested, and subsequently put that biometric information to commercial use within the state of California. Thus, Defendants have purposefully availed themselves of the benefits and protections of the state of California in conducting their unlawful enterprise, which purposeful availment constitutes sufficient minimum contacts with the state of California that the exercise of personal jurisdiction over Defendants with regard to the claims of Plaintiffs and the Class does not violate Due Process.

8.     This Court has personal jurisdiction over Defendants Hoan Ton-That and Richard Schwartz because, as set forth in more detail below, they conspired with Clearview and the Co-Conspirators as defined herein below to further the illegal scheme alleged in this Complaint, which directly targeted and impacted thousands, if not millions, of California residents and citizens, including in this District. Defendants Ton-That and Schwartz consented to, authorized, and directed the business conduct at issue in California, including in this District and have availed themselves of the laws and markets of this District.

9.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b), because a substantial part of the events or omissions giving rise to the claims occurred in this District. Venue is also proper under 18 U.S.C. §1965(a), because Clearview transacts a substantial amount of its business in this District. Alternatively, venue is proper under 28 U.S.C. §1391(b)(3) because this Court has personal jurisdiction over Defendants.

HAEGGQUIST & ECK, LLP

**THE PARTIES**

**Plaintiff Sean Burke**

10.     Plaintiff Sean Burke is a natural person and over the age of eighteen. Plaintiff Burke is, and at all relevant times has been, a resident and citizen of San Diego, California.

11.     Throughout the relevant period of this Complaint, numerous photographs that include images of Plaintiff Burke's face were uploaded to various internet-based platforms and websites, including on Facebook, Twitter, Instagram, Google, Venmo, and/or YouTube.

12.     Based on information and belief, Clearview "scraped" images of Plaintiff Burke's face from internet-based websites, in violation of several of the websites' terms of use and stored them in its database. Based on information and belief, in order to scrape Plaintiff Burke's image, Clearview's web scraper harvested information stored on servers in various states, including California and Illinois. Clearview also targeted companies that are at home in the state of California to perform its unlawful scraping. Clearview's software application then applied facial recognition software to the images of Plaintiff Burke's face, calculated his unique physical characteristics, and generated a biometric template therefrom. Clearview generated biometric information (a "Faceprint") enabling the identification of Plaintiff Burke, in direct violation of the laws identified in this Complaint, including the BIPA and CCPA. Clearview then sold, marketed, advertised, or otherwise made commercial use of access to its database containing Plaintiff Burke's photograph and Faceprint to third-party entities throughout the United States generally, and in the states of California and Illinois particularly, for a commercial monetary gain in an amount to be determined at trial.

13.     Plaintiff Burke never consented, agreed, or gave permission – written or otherwise – to Clearview to collect, capture, purchase, receive through trade, obtain, sell, lease, trade, disclose, redisclose, disseminate, or otherwise profit from

HAEGGQUIST & ECK, LLP

or use his photograph, likeness, and biometric information and identifiers. Likewise, Clearview never informed Plaintiff Burke by written notice or otherwise that Plaintiff Burke could prevent Clearview from collecting, capturing, purchasing, receiving through trade, obtaining, selling, leasing, trading, disclosing, redisclosing, disseminating, or otherwise profiting from or using his photograph, likeness, and biometric information and identifiers. Similarly, Plaintiff Burke was never provided with an opportunity to prohibit or prevent Clearview from collecting, capturing, purchasing, receiving through trade, obtaining, selling, leasing, trading, disclosing, redisclosing, disseminating, or otherwise profiting from or using his photograph, likeness, and biometric information and identifiers.

14.    As a result of Clearview's unauthorized collecting, capturing, purchasing, receiving through trade, obtaining, selling, leasing, trading, disclosing, redisclosing, disseminating, or otherwise profiting from or using Plaintiff Burke's photograph, likeness, and biometric information and identifiers, Plaintiff Burke was deprived of his control over that valuable and sensitive information. By depriving him of his control over this valuable information, Clearview misappropriated the value of his photograph, likeness, and biometric information and identifiers. Clearview has unlawfully profited therefrom. Plaintiff Burke has further suffered damages in the diminution in value of his sensitive biometric information and identifiers – information which is now at higher risk of privacy violations.

**Plaintiff James Pomerene**

15.    Plaintiff James (aka "Jim") Pomerene is a natural person and over the age of eighteen. Plaintiff Pomerene is, and at all relevant times has been, a resident and citizen of Rockford, Illinois.

16.    Throughout the relevant period of this Complaint, photographs that include images of Plaintiff Pomerene's face were uploaded to various internet-

HAEGGQUIST & ECK, LLP

based platforms and websites, including Facebook, Twitter, Instagram, Google, Venmo, and/or YouTube.

17.     Based on information and belief, Clearview "scraped" images of Plaintiff Pomerene's face from internet-based websites, in violation of several of the websites' terms of use and stored them in its database. Based on information and belief, in order to scrape Plaintiff Pomerene's image, Clearview's web scraper harvested information stored on servers in various states, including California and Illinois. Clearview also targeted companies that are at home in the state of California to perform its unlawful scraping. Clearview's software application then applied facial recognition software to the images of Plaintiff Pomerene's face, calculated his unique physical characteristics, and generated a biometric template therefrom. Clearview generated biometric information (a Faceprint) enabling the identification of Plaintiff Pomerene, in direct violation of the laws identified in this Complaint, including the BIPA and CCPA. Clearview then sold, marketed, advertised or otherwise made commercial use of access to its database containing Plaintiff Pomerene's photograph and Faceprint to third-party entities throughout the United States generally, and in the states of California and Illinois particularly, for a commercial monetary gain in an amount to be determined at trial.

18.     Plaintiff Pomerene never consented, agreed, or gave permission – written or otherwise – to Clearview to collect, capture, purchase, receive through trade, obtain, sell, lease, trade, disclose, redisclose, disseminate, or otherwise profit from or use his photograph, likeness, and biometric information and identifiers. Likewise, Clearview never informed Plaintiff Pomerene by written notice or otherwise that Plaintiff Pomerene could prevent Clearview from collecting, capturing, purchasing, receiving through trade, obtaining, selling, leasing, trading, disclosing, redisclosing, disseminating, or otherwise profiting from or using his photograph, likeness, and biometric information and identifiers. Similarly, Plaintiff Pomerene was never provided with an opportunity to prohibit or prevent

Clearview from collecting, capturing, purchasing, receiving through trade, obtaining, selling, leasing, trading, disclosing, redisclosing, disseminating, or otherwise profiting from or using his photograph, likeness, and biometric information and identifiers.

19.    As a result of Clearview's unauthorized collecting, capturing, purchasing, receiving through trade, obtaining, selling, leasing, trading, disclosing, redisclosing, disseminating, or otherwise profiting from or using Plaintiff Pomerene's photograph, likeness, and biometric information and identifiers, Plaintiff Pomerene was deprived of his control over that valuable and sensitive information. By depriving him of his control over this valuable information, Clearview misappropriated the value of his photograph, likeness, and biometric information and identifiers. Clearview has unlawfully profited therefrom. Plaintiff Pomerene has further suffered damages in the diminution in value of his sensitive biometric information and identifiers – information which is now at higher risk of privacy violations.

**Defendant Clearview AI, Inc.**

20.    Defendant Clearview AI, Inc., is a private, for-profit Delaware Corporation, with its principal place of business located in in New York, New York. Clearview markets, advertises, sells, and otherwise makes commercial use of its product throughout the United States, including in California, Illinois, New York and many other States. Based on information and belief, Clearview illicitly scraped the images of faces of billions of consumers from websites and platforms owned and operated by Illinois and California-based companies. Defendants are unlawfully using the biometric information, identifiers, and likeness of residents from all U.S. states, in California and Illinois. In other words, even though residents from U.S. states other than California and Illinois do not reside in California or Illinois, they are being specifically harmed by Defendants' conduct in California and Illinois in multiple ways, including: (a) Defendants illicitly

HAEGGQUIST & ECK, LLP

scraping images of their faces from servers in California and Illinois (among other states); and (b) Defendants unlawfully selling, using, or otherwise disclosing their biometric information, identifiers, and likeness to business entities in California and Illinois (among other states), who are then also violating some of the laws at issue in this Complaint. As such, Defendants have intentionally availed themselves of the laws and markets of this District through the use, promotion, sale, and/or distribution of the unlawful products and services at issue in this Complaint – not just for Plaintiff Burke and California residents, but for all residents across the United States, including Plaintiff Pomerene and Illinois residents.

21.    Defendant Clearview is a "private entity" within the meaning of the BIPA, which defines "private entity" as "any individual, partnership, corporation, [etcetera] … however organized." 740 ILCS 14/10. Based on information and belief, Clearview is also a "business" within the meaning of the CCPA because: (i) it is a corporation; (ii) it operates for a profit or financial benefit of its shareholders or other owners; (iii) it does business in the State of California; (iv) it collects "consumers' personal information" and determines the purposes and means of the processing of consumers' personal information; and (v) it derives 50 percent or more of its annual revenues from selling consumers' personal information and/or its sells and/or shares for commercial purposes, alone or in combination, the personal information of 50,000 or more consumers. Defendant Clearview is also a "person" within the meaning of California's commercial misappropriation statute, Civil Code §3344. As set forth below, Plaintiffs, individually and on behalf of the Class, bring Counts I-IV against Clearview.

**Defendant Hoan Ton-That**

22.    Defendant Hoan Ton-That is a founder and Chief Executive Officer of Clearview. Defendant Ton-That is a "private entity" within the meaning of the BIPA, which defines "private entity" as "any individual, partnership, corporation, [etcetera] … however organized." 740 ILCS 14/10. Defendant Ton-That is also a

HAEGGQUIST & ECK, LLP

"person" within the meaning of California's commercial misappropriation statute, Cal. Civ. Code §3344.

23.    As a founder and owner of Clearview, Defendant Ton-That knew of, participated in, consented to, approved, authorized, and directed the wrongful acts alleged in this Complaint. Based on information and belief, Defendant Ton-That conspired with Clearview and its other owners/shareholders, officers, and/or directors, including, without limitation, Defendant Richard Schwartz, to carry out the illegal scheme alleged in this Complaint. As set forth below, Plaintiffs bring Counts I, II and IV against Defendant Ton-That.

**Defendant Richard Schwartz**

24.    Defendant Richard Schwartz is a founder and, based on information and belief, an officer, director and/or principal of Clearview. Defendant Schwartz is a "private entity" within the meaning of the BIPA, which defines "private entity" as "any individual, partnership, corporation, [etcetera] … however organized." 740 ILCS 14/10. Defendant Schwartz is also a "person" within the meaning of California's commercial misappropriation statute, Cal. Civ. Code §3344.

25.    As a founder and officer, director, and/or principal of Clearview, Defendant Schwartz knew of, participated in, consented to, approved, authorized, and directed the wrongful acts alleged in this Complaint. Based on information and belief, Defendant Schwartz conspired with Clearview and its other owners/shareholders, officers, and/or directors, including, without limitation, Defendant Hoan Ton-That, to carry out the illegal scheme alleged in this Complaint. As set forth below, Plaintiffs bring Counts I, II and IV against all Defendants.

26.    The true names and capacities of defendants sued herein as Does 1 through 10, inclusive, are presently not known to Plaintiffs, who therefore sues these defendants by such fictitious names. Plaintiffs will seek to amend this complaint and include these Doe Defendants true names and capacities when they

HAEGGQUIST & ECK, LLP

are ascertained. Each of the fictitiously named defendants is responsible in some manner for the conduct alleged herein and for the injuries suffered by Plaintiffs and The Class.

## Defendants Conspired Amongst Themselves and With Others to Carry Out the Unlawful Scheme

27.    Defendants conspired amongst themselves and, based on information and belief, with the other owners, directors, officers, and/or shareholders of Clearview (the "Co-Conspirators"), to carry out the unlawful scheme, including the intentional torts. Defendants and the Co-Conspirators knew and/or had reason to know about Clearview's primary business function, which was to scrape the internet for images of faces, use facial recognition technology to generate biometric information and identifiers, and sell access of the same to third-party entities and agencies, without the consent of the consumers whose photographs, likenesses, and biometric information and identifiers were being used. Defendants and the Co-Conspirators agreed to this business plan – a plan, which when carried out, violated several laws, including, *inter alia*, the BIPA and California's Commercial Misappropriation statute. Defendants and the Co-Conspirators intended to profit from the primary, albeit unlawful, business plan of Clearview.

28.    Defendants each had knowledge of the unlawful business purpose, consented to and authorized the fulfillment of the unlawful business purpose, and directed and otherwise carried out the unlawful business purpose of the unauthorized collecting, capturing, purchasing, receiving through trade, obtaining, selling, leasing, trading, disclosing, redisclosing, disseminating, or otherwise profiting from and/or using Plaintiffs' and the Class's photographs, likenesses, and biometric information and identifiers without their consent.

29.    Each of the Co-Conspirators are responsible as joint tortfeasors for all damages ensuing from the wrongful conduct carried out by Defendants. Each

HAEGGQUIST & ECK, LLP

member of the conspiracy is liable for all acts done by others pursuant to the conspiracy, and for all damages caused thereby.

## FACTUAL ALLEGATIONS

### Biometrics and Privacy

30.     "Biometrics" refers to technologies used to identify an individual based on unique physical characteristics, *e.g.*, "face geometry." Throughout the last several years, companies have developed facial recognition technology, which works by scanning an image for human faces, extracting facial feature data from the image, generating a "faceprint" through the use of facial-recognition algorithms, and then comparing the resultant faceprint to other faceprints stored in a database. If a match is found, a person may be identified, including sensitive and confidential information about that person.

31.     This technology has raised serious privacy concerns about its massive scope and surreptitiousness. For example, in 2011, Google's Chairman at the time said it was a technology the company held back on because it could be used "in a very bad way." U.S. Senator Markey recognized that widespread use of the technology "could facilitate dangerous behavior and could effectively destroy individuals' ability to go about their daily lives anonymously."

32.     The Illinois Legislature has acknowledged that the "full ramifications of biometric technology are not fully known." 740 ILCS 14/5(f). It is known, however, that the "public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." 740 ILCS 14/5(g).

33.     "Biometrics are unlike other unique identifiers that are used to access finances or other sensitive information." 740 ILCS 14/5(c). "For example, social security numbers, when compromised, can be changed." *Id.* "Biometrics, however, are unique to the individual; therefore, once compromised, the individual has no

HAEGGQUIST & ECK, LLP

recourse … [and] is at heightened risk for identity theft ….” *Id.* Recognizing this problem, the Federal Trade Commission urged companies using facial recognition technology to ask for consent ***before*** scanning and extracting biometric data from photographs.[3] This prevailing view has been adopted by both the BIPA and the CCPA, which require notice to and consent from the person who's biometric identifier or information is being used. Unfortunately, Clearview could care less about the prevailing view or these laws and failed to obtain user consent before launching its widespread facial recognition program and continues to violate millions of California and Illinois residents' legal privacy rights.

### California's Consumer Privacy Act of 2018 (via UCL)

34.     Under the CCPA, a "business that collects a consumer's personal information shall, ***at or before*** the point of collection, inform consumers as to the categories of personal information to be collected and the purposes for which the categories of personal information shall be used." Cal. Civ. Code §1798.100(b). "A business shall not collect additional categories of personal information or use personal information collected for additional purposes without providing the consumer with notice consistent with this section." *Id.*

35.     The statute defines "personal information" as any "information that identifies, relates to, describes, is reasonably capable of being associated with, or could reasonable be linked, directly or indirectly, with a particular consumer or household." Cal. Civ. Code §1798.140(o)(1). Personal information includes, but is not limited to, "[b]iometric information." Cal. Civ. Code §1798.140(o)(1)(E). "'Biometric information' means an individual's physiological, biological, or behavioral characteristics, including an individual's deoxyribonucleic acid

---

[3]     *See Facing Facts: Best Practices for Common Uses of Facial Recognition Technologies*, Federal Trade Commission (Oct. 2012), *available at* https://www.ftc.gov/sites/default/files/documents/reports/facing-facts-best-practices-common-uses-of-facial-recognition-technologies/121022facialtechrpt.pdf.

HAEGGQUIST & ECK, LLP

(DNA), that can be used, singly or in combination with each other or with other identifying data, to establish individual identity." Cal. Civ. Code §1798.140(b). "Biometric information includes, but is not limited to, imagery of the iris, retina, fingerprint, *face*, hand, [etcetera] … from which an identifier template, such as a faceprint … can be extracted …." *Id.* (emphasis added).

### Illinois's Biometric Information Privacy Act ("BIPA")

36.     The BIPA was enacted in 2008. Under the BIPA, companies may not "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier ... unless it first:

> (1) informs the subject ... in writing that a biometric identifier ... is being collected or stored;
>
> (2) informs the subject ... in writing of the specific purpose and length of term for which a biometric identifier ... is being collected, stored, and used; and
>
> (3) receives a written release executed by the subject of the biometric identifier ...."

740 ILCS 14/15(b).

37.     The statute defines "biometric identifier" to include "retina or iris scan, fingerprint, voiceprint, or scan of hand or *face geometry*." 740 ILCS 14/10. "'Biometric Information' means any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." *Id.*

38.     The BIPA also regulates how companies acting within Illinois must handle biometric identifiers and information. *See* 740 ILCS 14/15(c)-(d). For example, the law prohibits selling, leasing, trading, or otherwise profiting from a person's biometric data. 704 ILCS 14/15(c). The BIPA also requires companies like Clearview to develop a publicly available written policy establishing a retention schedule and guidelines for permanently destroying biometric data. 740 ILCS 14/15(a).

HAEGGQUIST & ECK, LLP

HAEGGQUIST & ECK, LLP

**Clearview Knowingly and Intentionally Violated the BIPA and CCPA**

39.    As explained below, Defendants unlawfully collected, captured, purchased, received through trade, obtained, sold, leased, traded, disclosed, rediscclosed, disseminated, and/or otherwise profited from or used Plaintiffs' and The Class's photographs and biometric information and identifiers in violation of the CCPA, BIPA, and California's law against Commercial Misappropriation. Clearview has been described by the media as the "secretive company that might end privacy as we know it."[4]

40.    Clearview uses a software application to illicitly and secretly scrape billions of images from websites such as Twitter, Facebook, Venmo, Google, Instagram, and YouTube, in violation of many of the websites' policies. Indeed, companies such as Facebook and Twitter have sent Clearview cease and desist letters. Based on information and belief, Clearview's web scraping software accesses data, which includes the photographs and likenesses of Plaintiffs and Class members, stored on servers within California and throughout the United States.

41.    Clearview's software application then applies facial recognition software to the illicitly scraped images, whereby the company uses artificial intelligence algorithms to scan the facial geometry of faces in the images. The algorithm calculates an individual face's unique physical characteristics, which result in a biometric template that is separate and distinct from the image from which it was created. Clearview describes the technology as a "state-of-the-art neural net" to convert all images into mathematical formulas, or "vectors," based on facial geometry – like how far apart a person's eyes are. This process generates biometric information enabling the identification of the individuals in the images

---

[4]    *See*, *e.g.*, Hill, Kashmir (2020-01-18). "The Secretive Company That Might End Privacy as We Know It." *The New York Times*, ISSN 0362-4331, retrieved Jan. 18, 2020; updated Feb. 10, 2020.

(herein referred to as individuals' Faceprint), in direct violation of the BIPA and CCPA. Defendants engage in this process without notifying any of the individuals whose images Clearview has captured, converted into a Faceprint, stored, and shared for a profit. Defendants certainly have not obtained these individuals' consent – written or otherwise.

42.    Once Defendants generate the biometric information for millions of people, Clearview sells access to the database to law enforcement agencies and private companies. Instead of having limited photo arrays, agencies and private companies are now able to use Clearview's database of three billion photos:



A chart from marketing materials that Clearview provided to law enforcement. Clearview

43.    Based on information and belief, very few individuals have been arrested, much less convicted, using Clearview's database. Yet, these agencies and private companies have instantaneous access to the biometric information of billions of people allowing them to peep into almost every aspect of their digital lives, including who they associate with, where they live, etcetera

44.    It has also been reported that Defendants have real-time access to monitor which individuals the law enforcement agencies are searching for. For example, an investigative journalist from *The New York Times* who was doing a

HAEGGQUIST & ECK, LLP

story on Clearview had a law enforcement agency upload images of his face and run it through Clearview's application. Soon thereafter, the agency received calls from Clearview asking if it was talking to the media – a clear sign Clearview has the ability and appetite to monitor whom law enforcement is searching for.

45.     In addition, based on information and belief, the computer code underlying Clearview's software application includes programmable language to enable it to pair with augmented reality glasses. This tool potentially enables any user wearing the glasses to identify in real-time every person they see as they walk down the street, potentially revealing not just their names, but where they live, what they like to do, and who they know and associate with.

46.     Moreover, it has been shown that Clearview cannot adequately safeguard the biometric information and identifiers of Plaintiffs and The Class. On February 26, 2020, it was publicly reported that there was a data breach of Clearview's data storage servers, which compromised the privacy and security of every person whose image Clearview had scraped and used to generate biometric identifiers.

47.     The result of Clearview's technology is not a safer society by enabling law enforcement access to a broader database from which can lead to the capture of criminals. The result is a profit machine for a single company that relies on the secret use of individual's biometric information. This is a radical evasion and erosion of privacy. Defendants are laying the groundwork for a dystopian future and violating, *inter alia*, the BIPA and CCPA in the process.

## CLASS ACTION ALLEGATIONS

48.     Plaintiffs reallege and incorporate herein by reference each allegation in the preceding and subsequent paragraphs.

49.     Plaintiffs bring this action individually and on behalf of a class of similarly situated individuals pursuant to Rule 23 of the Federal Rules of Civil Procedure.

HAEGGQUIST & ECK, LLP

50.     As used herein, the following terms have the meanings set forth below:

(a)     "California Biometric Information" means an "individual's physiological, biological, or behavioral characteristics, including an individual's deoxyribonucleic acid (DNA), that can be used, singly or in combination with each other or with other identifying data, to establish individual identity" as defined under CCPA, Cal. Civ. Code §1798.140(b).

(b)     "Illinois Biometric Information" means "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual" as defined in the BIPA, 740 ILCS 14/10.

(c)     "Photograph" means "any photographic or photographic reproduction, still or moving, or any videotape or live television transmission, of any person, such that the person is identifiable" as defined by California Civil Code §3344(b).

51.     Plaintiffs seek to represent the following classes of persons:

(a)     **Sub-Class One (the "Commercial Misappropriation Class") (Cal. Civ. Code §3344)**:

All persons in the United States who had their Photograph or likeness knowingly used by Clearview, without those persons' consent, for commercial gain within the state of California.

(b)     **Sub-Class Two (the "BIPA Class") (740 ILCS 14/1, *et seq.*)**:

All persons in the United States who had their Illinois Biometric Information collected, captured, purchased, received, obtained, sold, leased, traded, disclosed, redisclosed, disseminated, and/or otherwise profited from and/or used by Clearview without their consent.

HAEGGQUIST & ECK, LLP

52.   Plaintiff Burke seeks to represent the following classes of persons:

(a)   **Sub-Class Three (the "CCPA Class") (Cal. Civ. Code §1798.100, *et seq*)**:

All persons who, while residing in California, had their California Biometric Information collected and/or used by Clearview without prior notice by Clearview and without their consent.

(b)   **Sub-Class Four (the "Unjust Enrichment Class")**:

All persons who, while residing in California, had their California Biometric Information misappropriated by Clearview from which Clearview was unjustly enriched.

53.   Collectively, the four sub-classes are herein referred to as "The Class."

54.   Excluded from The Class are Defendants, their officers and directors, families, owners, and legal representatives, heirs, successors, or assigns, and any entity in which Clearview have a controlling interest, and any Judge assigned to this case and their immediate families.

55.   Plaintiffs reserve the right to amend or modify the class definition in connection with their motion for class certification, as a result of discovery, at trial, or as otherwise allowed by law.

56.   Plaintiffs bring this action individually and on behalf of all others similarly situated because there is a well-defined community of interest in the litigation and the proposed sub-classes are easily ascertainable.

**Numerosity**

57.   The potential members of The Class, and each of the four sub-classes independently, are so numerous joinder of all the members is impracticable. While the precise number of members of The Class, or each of the four sub-classes, has not been determined, Plaintiffs are informed and believe The Class, and each of

HAEGGQUIST & ECK, LLP

the four-sub classes, include at least thousands (and potentially even millions) of individuals.

58.     Based on information and belief, Clearview's records evidence the number and location of The Class, and each of the four sub-classes, respectively.

### Commonality and Predominance

59.     There are questions of law and fact common to The Class that predominate over any questions affecting only individual class members. These common questions of law and fact include, without limitation:

(a)     Whether Clearview collected, captured, received, or otherwise obtained Plaintiffs' and the BIPA Class's Illinois Biometric Information;

(b)     Whether Clearview has sold, leased, traded, or otherwise profited from Plaintiffs' and the BIPA Class's Illinois Biometric Information;

(c)     Whether Clearview disclosed, redisclosed, or otherwise disseminated Plaintiffs' and the BIPA Class's Illinois Biometric Information;

(d)     Whether Clearview properly informed Plaintiffs and the BIPA Class that it collected, captured, purchased, received, obtained, sold, leased, traded, disclosed, redisclosed, disseminated, and/or otherwise profited from and/or used their Illinois Biometric Information;

(e)     Whether Clearview obtained a written release (as defined in 740 ILCS 14/10) from Plaintiffs and the BIPA Class to collect, capture, or otherwise obtain their biometric identifiers;

(f)     Whether Clearview made publicly available to Plaintiffs and the BIPA Class, a written policy establishing a retention schedule and guidelines for permanently destroying Illinois Biometric Information in compliance with the BIPA;

(g)     Whether Clearview's violations of the BIPA were committed intentionally, recklessly, or negligently;

HAEGGQUIST & ECK, LLP

(h)     Whether Clearview collected and/or used Plaintiff Burke's and the CCPA Class's California Biometric Information without first providing notice of such collection and/or use;

(i)     Whether Clearview knowingly used Plaintiff Burke's Photograph and/or the likeness of Plaintiffs and the Commercial Misappropriation Class for commercial gain without their consent;

(j)     Whether Clearview was unjustly enriched by the misappropriation of Plaintiff Burke's and the Unjust Enrichment Class's California Biometric Information;

(k)     Whether Defendants conspired for the purpose of accomplishing some concerted action either an unlawful purpose or lawful purpose by unlawful means; and

(l)     Whether Plaintiffs and The Class have been harmed and the proper measure of relief.

## Typicality

60.     The claims of Plaintiffs are typical of the claims of The Class. Plaintiffs and all members of The Class sustained injuries and damages arising out of and caused by Clearview's common course of conduct in violation of laws, regulations that have the force and effect of law, and statutes as alleged herein.

## Adequacy of Representation

61.     Plaintiffs will fairly and adequately represent and protect the interests of The Class. Counsel who represents Plaintiffs are competent and experienced in litigating large consumer class actions.

## Superiority of Class Action

62.     A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of The Class is not practicable, and questions of law and fact common to The Class predominate over

HAEGGQUIST & ECK, LLP

any questions affecting only individual members of The Class. Each member of The Class has been damaged and is entitled to recovery because of Clearview's uniform unlawful policy and/or practices described herein. There are no individualized factual or legal issues for the court to resolve that would prevent this case from proceeding as a class action. Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system. Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

**COUNT I**
**Unlawful and Unfair Business Practices**
**In Violation of Bus. & Prof. Code §17200, *et seq*.**
**(On Behalf of Plaintiff Burke, Plaintiffs, the CCPA Class, and the**
**Commercial Misappropriation Class against All Defendants)**

63.    Plaintiffs hereby reallege and incorporate by reference the allegations contained in the paragraphs above, as if fully set forth herein.

64.    Defendants engaged in unlawful activity prohibited by the UCL. The actions of Defendants as alleged within this Complaint constitute unlawful and unfair business practices with the meaning of the UCL.

65.    Defendants have conducted the following unlawful activities:

(a)    Violations of the CPPA, Civil Code §1798.100(b) (Defendant Clearview); and

(b)    Violations of Commercial Misappropriation, Civil Code §3344(a) (all Defendants).

66.    The statutory requirements for Commercial Misappropriation under Civil Code §3344, including how Defendants violated that law, are set forth in detail in Count II herein below.

67.    With respect to Clearview's violation of the CCPA, a "business that collects a consumer's personal information shall, at or before the point of

collection, inform consumers as to the categories of personal information to be collected and the purposes for which the categories of personal information shall be used." Cal. Civ. Code §1798.100(b). "A business shall not collect additional categories of personal information or use personal information collected for additional purposes without providing the consumer with notice consistent with this section." *Id.*

68.     The CCPA defines "personal information" as any "information that identifies, relates to, describes, is reasonably capable of being associated with, or could reasonable be linked, directly or indirectly, with a particular consumer or household." Cal. Civ. Code §1798.140(o)(1). Personal information includes, but is not limited to, "[b]iometric information." Cal. Civ. Code §1798.140(o)(1)(E). "'Biometric information' means an individual's physiological, biological, or behavioral characteristics, including an individual's deoxyribonucleic acid (DNA), that can be used, singly or in combination with each other or with other identifying data, to establish individual identity." Cal. Civ. Code §1798.140(b). "Biometric information includes, but is not limited to, imagery of the iris, retina, fingerprint, *face*, hand, [etcetera] … from which an identifier template, such as a faceprint … can be extracted …." *Id.* (emphasis added).

69.     As set forth in detail elsewhere in this Complaint, Clearview collected Plaintiff Burke's and the CCPA Class's "personal information" as defined in the CCPA and failed to inform Plaintiff Burke and the CCPA Class of the same at or before the point of collection. Accordingly, Clearview violated the CCPA. Clearview also engaged in Commercial Misappropriation as detailed in Count II herein below.

70.     In addition to constituting "unlawful conduct" in violation of the above-noted laws, Clearview's activities also constitute unfair practices in violation of the UCL because Clearview's practices violate an established public policy, and/or the practice is immoral, unethical, oppressive, unscrupulous, and

HAEGGQUIST & ECK, LLP

substantially injurious to Plaintiff Burke, the CCPA Class, and the Commercial Misappropriation Class.

71.    Because of Defendants' violations of the identified laws, Plaintiff Burke, the CCPA Class, and the Commercial Misappropriation Class have suffered injury-in-fact and have lost money or property. Plaintiff Burke, the CCPA Class, and the Commercial Misappropriation Class are entitled to restitution, restitutionary disgorgement, an injunction, declaratory, and other equitable relief against such unlawful practices to prevent future harm for which there is no adequate remedy at law.

72.    As a direct and proximate result of the unfair business practices of Defendants, Plaintiff Burke, the CCPA Class, and the Commercial Misappropriation Class are entitled to equitable and injunctive relief, including restitutionary disgorgement of the value of Plaintiff Burke's, the CCPA Class's, and the Commercial Misappropriation Class's California Biometric Information and Photographs and/or likeness which have been unlawfully misappropriated by Clearview. Defendants should be enjoined and cease and desist from engaging in the practices described herein for the maximum time permitted pursuant to California Business & Professions Code §17208, including any tolling.

73.    The unlawful and unfair conduct alleged herein is continuing, and there is no indication that Defendants will refrain from such activity in the future. Plaintiffs believe and allege that if Defendants are not enjoined from the conduct set forth in this Complaint, they will continue to violate California's and Illinois's laws. Plaintiffs further requests that the Court issue a preliminary and permanent injunction.

74.    Plaintiffs are also entitled to and hereby claims attorneys' fees and costs, pursuant to the private attorney general theory doctrine (Code of Civil Procedure §1021.5), and any other applicable provision for attorney fees and costs, based upon the violation of the underlying public policies.

HAEGGQUIST & ECK, LLP

**COUNT II**
**Commercial Misappropriation**
**In Violation of California Civil Code §3344(a)**
**(On Behalf of Plaintiffs and The Commercial Misappropriation Class**
**against All Defendants)**

75.     Plaintiffs hereby reallege and incorporate by reference the allegations contained in the paragraphs above, as if fully set forth herein.

76.     Pursuant to California Civil Code §3344(a) it is unlawful for any person to knowingly use "another's name, voice, signature, photograph, or likeness, in any manner … without such person's prior consent …."

77.     Any person who violates this section shall be liable to the injury party or parties "in an amount equal to the greater of seven hundred fifty dollars ($750) or the actual damages suffered by him or her as a result of the unauthorized use, and any profits from the unauthorized use that are attributable to the use and are not taken into account in computing the actual damages." Civil Code §3344(a); *See Orthopedic Systems, Inc. v. Schlein*, 202 Cal. App. 4th 529, 547 (2011) ("We hold that under section 3344(a), an injured party may recover either the amount of damages specified in the statute or actual damages, whichever is greater, as well as profits from the unauthorized use.").

78.     Plaintiffs and the Commercial Misappropriation Class had Photographs (as defined in Civil Code §3344(b)) posted to various websites on the internet, including on Facebook, Twitter, Google, Instagram, Venmo, and YouTube, under the terms and conditions governing those sites.

79.     Without providing notice to, and/or obtaining consent from, Plaintiffs and the Commercial Misappropriation Class, Defendants knowingly and illicitly obtained Photographs and likenesses of Plaintiffs and the Commercial Misappropriation Class by scraping the internet in violation of many of the websites' policies which prohibited such conduct. Without notice to, and/or consent from, Plaintiffs and the Misappropriation Class, Defendants knowingly

HAEGGQUIST & ECK, LLP

used their Photographs and likenesses to Defendants' advantage by selling access to them to third-party entities within the state of California for a commercial gain.

80.   The use of Plaintiffs and the Commercial Misappropriation Class's Photographs and likenesses by Defendants did not have any connection with any news, public affairs, sports broadcast or account, or any political campaign.

81.   "'Shareholders, officers, and directors of corporations'" may be "'held personally liable for intentional torts when they knew or had reason to know about but failed to put a stop to tortious conduct.'" *Asahi Kasei Pharma Corp. v. Actelion Ltd.*, 222 Cal. App. 4th 945, 966 (2013) (internal citation omitted). In addition, all persons "who are shown to have participated in an intentional tort are liable for the full amount of the damages suffered." *Id.* Defendants Hon-That and Schwartz knew of, consented to, directed, and/or authorized the tortious conduct and failed to put a stop to it.

82.   As a direct and proximate result of Defendants' conduct, Plaintiffs and the Commercial Misappropriation Class have been harmed in an amount to be proven at the time of trial.

83.   Plaintiffs are also entitled to claim recovery of costs and reasonable attorneys' fees pursuant to Civil Code §3344(a).

### COUNT III
### Unjust Enrichment / Restitution
### (On Behalf of Plaintiff Burke and The Unjust Enrichment Class against Defendant Clearview)

84.   Plaintiffs hereby reallege and incorporate by reference the allegations contained in the paragraphs above, as if fully set forth herein.

85.   Clearview was unjustly enriched by its unlawful misappropriation of Plaintiff Burke's and the Unjust Enrichment Class's California Biometric Information, Photographs, and likeness. Through its unlawful conduct, Clearview received and retained a benefit it otherwise would not have achieved. By depriving Plaintiff Burke and the Unjust Enrichment Class of control over their valuable

27
Case No. 3:20-cv-00370-BAS-MSB
FIRST AMENDED CLASS ACTION COMPLAINT

Biometric Information, Clearview took control of and misappropriated the value of their California Biometric Information. Clearview's conduct also exposed Plaintiff Burke and the Unjust Enrichment Class to a heightened risk of an invasion of their privacy.

86.     There is not another adequate remedy at law. It would be unjust and unfair for Clearview to retain any of the benefits obtained from its unlawful misappropriation of Plaintiff Burke's and the Unjust Enrichment Class's California Biometric Information.

87.     Clearview should be ordered to disgorge the proceeds that it unjustly received from the misappropriation of Plaintiff Burke's and the Unjust Enrichment Class's California Biometric Information.

**COUNT IV**
**Violation of the BIPA**
**740 ILCS §14/1, *et seq*.**
**(On Behalf of Plaintiffs and the BIPA Class against All Defendants)**

88.     Plaintiffs hereby reallege and incorporate by reference the allegations contained in the paragraphs above, as if fully set forth herein.

89.     Defendants violated the following sections of the BIPA:

(a)     740 ILCS 14/15(a);

(b)     740 ILCS 14/15(b);

(c)     740 ILCS 14/15(c); and

(d)     740 ILCS 14/15(d).

90.     Section 15(a) of the BIPA requires that any "private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first." 740 ILCS 14/15(a).

HAEGGQUIST & ECK, LLP

91.     Section 15(b) of the BIPA makes it unlawful for any private entity to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first: (1) informs the subject ... in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject ... in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information ...." 740 ILCS 14/15(b).

92.     Section 15(c) of the BIPA makes it unlawful for any private entity to, among other things, "sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information." 740 ILCS 14/15(c).

93.     Section 15(d) of the BIPA makes it unlawful for any private entity to, among other things, "disclose, redisclose, or otherwise disseminate a person's or a customer's biometric identifier or biometric information unless: (1) the subject of the biometric identifier or biometric information … consents to the disclosure or redisclosure; (2) the disclosure or redisclosure completes a financial transaction requested by the subject of the biometric identifier or the biometric information …; (3) the disclosure or redisclosure is required by State or federal law or municipal ordinance; or (4) the disclosure is required pursuant to a valid warrant or subpoena issued by a court of competent jurisdiction." 740 ILCS 14/15(d).

94.     Defendants violated Sections 15(a)-(d) of the BIPA. Preliminarily, Clearview is a Delaware corporation and thus qualifies as a "private entity" under the BIPA. *See* 740 ILCS 14/10. Defendants Ton-That and Schwartz are "individuals" and, thus, are each a "private entity" under the BIPA. *Id.*

95.     Plaintiffs' and The Class's Faceprints are "biometric identifiers" and "biometric information" pursuant to 740 ILCS 14/10.

HAEGGQUIST & ECK, LLP

96.     During the relevant period, Defendants did not make available to the public a written policy establishing a retention schedule and guidelines for permanently destroying Plaintiffs' and the BIPA Class's biometric identifiers and biometric information as specified by the BIPA. *See* 740 ILCS 14/15(a). Thus, Defendants violated Section (a) of the BIPA.

97.     Defendants systematically and automatically collected, captured, purchased, received, and/or otherwise obtained Plaintiffs' and the BIPA Class's biometric identifiers and/or biometric information without first obtaining the specific written release required by 740 ILCS 14/15(b)(3). Likewise, Defendants did not properly inform Plaintiffs or the BIPA Class in writing that their biometric identifiers and/or biometric information were being collected, captured, purchased, received, and/or otherwise obtained, nor did it inform them in writing of the specific purpose and length of term for which their biometric identifiers and/or biometric information were being collected, captured, purchased, received, and/or otherwise obtained as required by 740 ILCS 14/15(b)(1)-(2). Thus, Defendants violated Section (b) of the BIPA.

98.     Defendants knowingly sold, leased, traded, and/or otherwise profited from Plaintiffs' and the BIPA Class's biometric identifiers and/or biometric information. Thus, Defendants violated Section (c) of the BIPA.

99.     Defendants also disclosed, redisclosed, and/or otherwise disseminated Plaintiffs' and the BIPA Class's biometric identifiers and/or biometric information without obtaining the consent from Plaintiffs and the BIPA Class and/or their authorized representatives. The disclosure, redisclosure, and/or dissemination by Defendants of Plaintiffs' and the BIPA Class's biometric identifiers and/or biometric information was not to complete a financial transaction requested or authorized by Plaintiffs or members of the BIPA Class, nor was the disclosure and/or redisclosure required by State or federal law, municipal

ordinance, or required pursuant to a valid warrant or subpoena issued by a court of competent jurisdiction. Thus, Defendants violated Section (d) of the BIPA.

100.   Defendants Ton-That and Schwartz conspired with Clearview and the Co-Conspirators to carry out the unlawful scheme set forth above. They each had direct knowledge of the scheme, and consented, participated, directed, and otherwise assisted in carrying out the unlawful scheme. Based on information and belief, Defendants are continuing to direct and carry out the unlawful scheme.

101.   Plaintiffs and the BIPA Class have been directly harmed by Clearview's violations of Sections 14/15(a)-(d) of the BIPA. They have been deprived of their control over their valuable information, and otherwise suffered monetary and non-monetary losses. By depriving Plaintiffs and the BIPA Class of control over their valuable information, Defendants misappropriated the value of their biometric identifiers and/or biometric information. Based on information and belief, Defendants have profited from its unlawful conduct.

102.   On behalf of Plaintiffs and the BIPA Class, Plaintiffs seek: (i) injunctive and equitable relief as necessary to protect the interests of Plaintiffs and the BIPA Class by requiring Defendants to comply with the BIPA's requirements; (ii) statutory damages of $5,000 per intentional or reckless violation of the BIPA pursuant to 740 ILCS 14/20(2) and statutory damages of $1,000 per negligent violation of the BIPA pursuant to 740 ILCS 14/20(1); and (iii) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

## PRAYER FOR RELIEF

Wherefore, Plaintiffs, individually and on behalf of The Class, respectfully request that this Court enter an Order:

A.   Certifying this case as a class action on behalf of the four sub-classes defined above, appointment of the named Plaintiffs as the representatives of The Class, and appointing their counsel as Class Counsel;

HAEGGQUIST & ECK, LLP

1    B.    Declaring that Defendants' actions, as set out above, violate the
2    BIPA, 740 ILCS 14/1, *et seq*.;

3    C.    Declaring that Clearview's actions, as set out above, violate the
4    CCPA, Cal. Civ. Code §1798.100, *et seq*.;

5    D.    Declaring that Defendants' actions, as set out above, violate
6    California's commercial misappropriation statute, Cal. Civ. Code §3344(a);

7    E.    Declaring that Defendants' actions, as set out above, violate
8    California's UCL, Bus. & Prof. Code §17200, *et seq*.;

9    F.    Awarding    compensatory,    non-compensatory,    statutory,
10   exemplary, and punitive damages;

11   G.    Awarding statutory damages of $5,000 per intentional or
12   reckless violation of the BIPA pursuant to 740 ILCS 14/20(2) and statutory
13   damages of $1,000 per negligent violation of the BIPA pursuant to 740 ILCS
14   14/20(1);

15   H.    Awarding either the amount of damages specified in the statute
16   or actual damages, whichever is greater, as well as profits from the unauthorized
17   use pursuant California's commercial misappropriation statute, Cal. Civ. Code
18   §3344(a);

19   I.    Awarding restitution of all monies, expenses, and costs due to
20   Plaintiffs and The Class;

21   J.    Awarding restitutionary disgorgement from the unlawful and
22   unfair business practices in violation of Bus. & Prof. Code §§17200, *et seq*.;

23   K.    Awarding Plaintiffs and The Class their reasonable attorneys'
24   fees, costs, and litigation expenses;

25   L.    Awarding Plaintiffs and The Class pre- and post-judgment
26   interest, to the extent allowable;

27
28

HAEGGQUIST & ECK, LLP

1       M.  Awarding injunctive and other equitable relief as necessary to

2    protect the interests of The Class, including, among other things, an order requiring

3    Defendants to comply with the BIPA and CCPA; and

4       N.  Awarding such other and further relief as equity and justice

5    may require.

6               **JURY DEMAND**

7       Plaintiffs, individually, and on behalf of The Class, hereby demand trial by

8    jury on all issues so triable.

9     Dated: April 7, 2020      HAEGGQUIST & ECK, LLP

10                   AMBER L. ECK (177882)

11                   ALREEN HAEGGQUIST (221858)

                 AARON M. OLSEN (259923)

12                   IAN PIKE (329183)

13

14

15              By: _____

                 AARON M. OLSEN

16

17              225 Broadway, Suite 2050

           San Diego, CA  92101

18              Telephone: 619-342-8000

           Facsimile: 619-342-7878

19              aaarono@haelaw.com

20              aarono@zhlaw.com

21              Attorneys for Plaintiffs and the Proposed

22              Class

23

24

25

26

27

28

HAEGGQUIST & ECK, LLP

Case No. 3:20-cv-00370-BAS-MSB
FIRST AMENDED CLASS ACTION COMPLAINT

1

## CERTIFICATE OF SERVICE

2    I hereby certify that on April 7, 2020, I authorized the electronic filing of

3 the foregoing with the Clerk of the Court using the CM/ECF system which will

4 send notification of such filing to the e-mail addresses denoted on the Electronic

5 Mail Notice List.

6    I certify under penalty of perjury under the laws of the United States of

7 America that the foregoing is true and correct.  Executed on April 7, 2020.

8

                /s/Aaron M. Olsen

9                 AARON M. OLSEN

10

            HAEGGQUIST & ECK, LLP

11          AARON M. OLSEN (259923)

12          225 Broadway, Suite 2050

            San Diego, CA 92101

13          Telephone: 619-342-8000

14          Facsimile: 619-342-7878

            aarono@haelaw.com

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HAEGGQUIST & ECK, LLP

Case No. 3:20-cv-00370-BAS-MSB

FIRST AMENDED CLASS ACTION COMPLAINT